UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

**CIVIL ACTION NO. 02-433-C**

**MARKET FINDERS
INSURANCE CORPORATION,**                                                                 **PLAINTIFF,**

V.                                  **MEMORANDUM OPINION AND ORDER**

**SCOTTSDALE INSURANCE
COMPANY,**                                                                                           **DEFENDANT.**

\* \* \* \* \* \* \* \* \* \*

This matter is before the court on the plaintiff's motion for summary judgment on the defendant's counterclaims. The court, having reviewed the record and being otherwise sufficiently advised, will deny the motion.

**Factual Background**

In deciding a motion for summary judgment, the court looks at the facts in a light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157 (1970).

Market Finders Insurance Corporation ("Market Finders") is an authorized insurance agent for Scottsdale Insurance Company ("Scottsdale"). A "General Agency Agreement" memorializes that relationship. This agreement contains indemnity and choice-of-law provisions and grants Market Finders the authority to quote, bind, and execute insurance contracts on behalf of Scottsdale. In 1999, National Emergency Services ("NES"), through its insurance broker, contacted

Market Finders to secure a medical malpractice insurance policy. As agent for Scottsdale, Market Finders wrote the coverage for NES; Scottsdale underwrote the policy. In March 2000, after a series of miscommunications between Market Finders and Scottsdale, the policy was canceled.

As a result of the cancellation, NES sued both Market Finders and Scottsdale in a Texas state court. By agreement on August 2, 2002, Scottsdale assumed the defense of and agreed to indemnify Market Finders, with certain limitations. One such limitation was that Scottsdale could withdraw its offer of indemnity if it learned that Market Finders "caused or contributed to cause" NES's claim. Additionally, on August 17, 2002, the parties agreed that "[n]othing said or done by any attorney, witness, fact-finder or jurist in [the Texas action] will be used by [Scottsdale] in any way in any subsequent proceeding to determine responsibility, or relative responsibility vis-a-vis [Market Finders]." At the Texas trial, Scottsdale and Market Finders presented a joint defense. Scottsdale made all of the trial strategy decisions, including the decision not to call a Market Finders representative who Scottsdale now claims is responsible for NES's claims.

Ultimately, NES was successful in the Texas action. The jury found that Scottsdale, individually, was liable for breaching its duty of good faith and fair dealing, and for breaching its contract with NES. With respect to the breach of its duty of good faith and fair dealing, the jury found that Scottsdale acted with malice, defined, in part, as having "actual, subjective awareness of the risk

involved, but nevertheless [proceeding] with conscious indifference to the rights, safety, or welfare of NES." The jury also found that Market Finders and Scottsdale were jointly and severally liable, engaging in unfair or deceptive acts or practices. Scottsdale paid the entire judgment and, in its counterclaim here, seeks contractual indemnification and common-law contribution from Market Finders. Market Finders seeks summary judgment on these claims, arguing that the indemnification agreement does not require it to indemnify Scottsdale, that applicable law does not allow Scottsdale to seek contribution, and that principles of waiver and estoppel preclude Scottsdale from seeking indemnification or contribution.

**Standard of Review**

"Summary judgment is proper where there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law." *Browning v. Levy*, 283 F.3d 761, 769 (6th Cir. 2002) (citing Fed. R. Civ. P. 56(c)). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . . ." *Celotex Corp.*, 477 U.S. at 323. In deciding the motion, the court must view the evidence and draw all reasonable inferences in favor of the non-moving party. *Id.* A judge is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). A genuine issue exists only when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Browning*, 283 F.3d at

769 (quoting *Anderson*, 477 U.S. at 252). The initial burden of showing the absence of a genuine issue of material fact rests on the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the opposing party must show that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

**Contractual Indemnification**

The parties agree that Arizona law controls whether Scottsdale is entitled to indemnification. Under Arizona law, the general rule is that an indemnitee is not entitled to indemnification resulting from its active negligence. *Cunningham v. Goetl Air Conditioning*, 980 P.2d 489, 493 (Ariz. 1999). Active negligence requires that the indemnitee participate in an affirmative act of negligence, be connected with negligent acts or omissions by knowledge or acquiescence, or fail to perform a duty that it had agreed to perform. *Estes Co. v. Aztec Constr.*, 677 P.2d 939, 942 (Ariz. Ct. App. 1983). In determining whether the general rule applies, the court must examine the "all encompassing language" of the agreement. *Id.* If the language "clearly and unequivocally indicates that one party is to be indemnified regardless of whether or not that injury was caused in part by that party, indemnification is required notwithstanding the indemnitee's active negligence." *Id.* The relevant portion of the instant indemnity agreement reads,

> [Market Finders] agrees to indemnify and hold [Scottsdale] harmless for any damages resulting directly or indirectly from any violations of any insurance law or Insurance Department regulation and/or breach of [Market Finder's] obligations under this Agreement.

This language does not suggest that the parties contemplated anything other than the general rule. Scottsdale argues that this language sufficiently demonstrates the parties' intent that Scottsdale be entitled to indemnity regardless of negligence on its part and points to the analysis in *Cunningham*, 980 P.2d at 493, and *Washington Elementary School Dist. No. 6 v. Baglino Corp.*, 817 P.2d 3, 6 (Ariz. 1991), to support its argument. In both cases, the indemnity provisions contained specific language defining the circumstances under which an indemnitee was entitled to indemnification.[1] However, the indemnity agreement at issue here contains no such language. Therefore, under Arizona law, active negligence from Scottsdale obviates Market Finders' duty to indemnify.

The definition of "malice" in the Texas jury instructions is similar to the concept of "active negligence" as defined in Arizona case law. However, although the Texas jury found that Scottsdale acted with malice in breaching its duty of good faith and fair dealing, it did not make any similar finding suggesting that Scottsdale was actively negligent in engaging in unfair or deceptive acts or practices. Therefore, there is an issue of material fact as to Scottsdale's degree of

---

[1] The language in the *Cunningham* agreement required the indemnitor to "indemnify and hold [indemnitee] harmless against any and all claims and expenses . . . arising from any accident or other occurrence . . . *when such injury will be caused in part or in whole by the act, neglect, fault of or omission of any duty or negligence of [indemnitor]*." 980 P.2d at 493 (internal marks omitted) (emphasis added). The *Bagliano* language read that indemnification must be provided "regardless of whether or not the injury is caused in part by a party indemnified hereunder." 817 P.2d at 6.

negligence and it is inappropriate for the court to decide the parties' eligibility for indemnification.

Market Finders argues that because the Texas jury found Scottsdale "separately and individually liable for its own conduct, any indemnity award in this case would necessarily result in Market Finders also indemnifying Scottsdale for [Scottsdale's] own negligence and/or culpable acts as well as the conduct of Market Finders." However, it offers no authority to support the argument; that Scottsdale is precluded from seeking indemnification for causes of action where it was actively negligent does not preclude it from seeking indemnification for claims where it was not actively negligent. Accordingly, summary judgment on this ground is inappropriate.

**The Contribution Claim**

The choice-of-law provision in the General Agency Agreement reads that the "drafting, execution, interpretation, and enforcement of the Agreement shall be governed by Arizona law." Market Finders argues that because this clause is silent on the question of contribution, Arizona law does not control the parties' right to contribution. Market Finders then argues that a choice-of-law analysis requires the court to apply Texas law and, under Texas law, Scottsdale's contribution claim is not viable. Scottsdale argues that the General Agency Agreement requires this court to apply Arizona law and alternatively, even under a choice-of-law analysis, Scottsdale posits that Texas law is inapplicable.

Although Market Finders correctly recognizes that the instant choice-of-law provision does not specifically mention "*contribution*," the provision does mention "*enforcement*." The court, in reviewing the language of the General Agency Agreement, finds that the term "enforcement" is a broad, all-encompassing term which suggests that the parties intended their relationship, including the resolution of any disputes, to be governed by Arizona law. The notion of contribution concerns the relationship of tortfeasors with each other, not with the tort victim. *Bill Alexander Ford, Lincoln Mercury, Inc. v. Casa Ford, Inc.*, 931 P.2d 1126, 1128 (Ariz. Ct. App. 1996). Even where one state's law governs the substantive tort, a court may choose to apply another state's law in determining any right to contribution. *See id*. at 1129 (applying Arizona law of contribution where substantive tort was governed by Texas law).

Moreover, even if the court were to engage in a conflicts-of-law analysis as desired by Market Finders, Texas law would not control the contribution issue. In conducting such an analysis, this court must apply Kentucky's choice-of-law rules. *Muncie Power Prod. Inc. v. United Tech. Auto. Inc.*, 328 F.3d 870 (6th Cir. 2003). Kentucky follows the Restatement's test to determine which law to apply. *See Lewis v. Am. Family Ins. Group*, 555 S.W. 2d 579 (Ky. 1977). The Restatement requires the court to consider four factors – the place where the injury occurred; the place where the conduct causing the injury occurred; the place of incorporation or business of the parties; and the place where the relationship of the parties is

centered. Restatement 2d of Conflicts of Laws §§ 145, 173. These factors are weighed according to their relative importance regarding a particular issue. Here, although the tort occurred in Texas, the choice-of-law provision centers the parties' relationship in Arizona. Similarly, although Scottsdale is incorporated in Arizona, neither party has a significant relationship with Texas. Therefore, the court will decline to apply Texas law governing contribution and will not consider Market Finders' argument that, under Texas law, Scottsdale is not entitled to contribution.

**Waiver and Estoppel**

Market Finders argues that Scottsdale's actions in the Texas litigation constitute estoppel by acquiescence. Specifically, Market Finders objects to Scottsdale's failure to state that it would seek indemnification or contribution "if the case ended badly." Market Finders also argues that the language in the April 17th agreement and the doctrine of collateral estoppel terminate Scottsdale's right to seek indemnity or contribution from Market Finders. The court does not credit any of these arguments.

Acquiescence consists of assent by words or conduct on which the other party relies and may form the basis for a defense of estoppel. *Hazard Coal Corp. v. Kentucky W. Virginia Gas Co.*, 311 F.3d 733, 740 (6th Cir. 2002). Market Finders argues that Scottsdale's failure to state that it would seek indemnification caused Market Finders to withhold certain key witnesses in the Texas litigation. Scottsdale's failure to inform Market Finders that it would seek contribution or

8

indemnification does not support a defense of estoppel by acquiescence. Nothing requires Scottsdale to inform Market Finders of any post-litigation strategy. Nor does the court, in reviewing the language of the April 17th agreement, find anything that limits Scottsdale's right to seek indemnification or contribution in any future case. The agreement, as the court has previously held, merely limits Scottsdale's right to use the findings in the Texas litigation against Market Finders. However, it does not prevent Scottsdale from attempting to re-prove any of these findings in subsequent litigation. Accordingly,

**IT IS ORDERED** that the plaintiff's renewed motion for summary judgment (DE 75) is **DENIED**.

Signed on  November 1, 2005

**Jennifer B. Coffman, Judge**
**United States District Court**