**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

CIVIL ACTION NO. 02-433-C

MARKET FINDERS
INSURANCE CORPORATION,                                                    PLAINTIFF,

V.                          <u>MEMORANDUM OPINION AND ORDER</u>

SCOTTSDALE INSURANCE
COMPANY,                                                                DEFENDANT.

* * * * * * * * * *

This matter is before the court on the plaintiff's motion for summary

judgment on the defendant's counterclaims (DE 99), and two motions in limine, one

filed by the plaintiff and one filed by the defendant (DE 100, DE 101).  The court,

having reviewed the record and being otherwise advised, will grant the plaintiff's

motion for summary judgment.  Because the court's order disposes of all remaining

claims in this matter, the court will also deny the motions in limine as moot.

I.      STANDARD OF REVIEW

"Summary judgment is proper where there are no genuine issues of material

fact in dispute and the moving party is entitled to judgment as a matter of law."

*Browning v. Levy*, 283 F.3d 761, 769 (6th Cir 2002) (citing Fed. R. Civ. P. 56(c)).

"One of the principal purposes of the summary judgment rule is to isolate and

dispose of" claims or defenses that are factually unsupported.  *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 323 (1986).  In ruling on such a motion, the court must

view the evidence and draw all reasonable inferences in favor of the non-moving

party.  *Id.*  The court is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  A genuine issue for trial exists only when there is sufficient "evidence on which the jury could reasonably find for the plaintiff."  *Browning*, 283 F.3d at 769 (quoting *Anderson*, 477 U.S. at 252).

## II.   BACKGROUND

This court has issued two previous orders denying motions for summary judgment in this matter, and therefore, the court will conduct only a brief review of the relevant facts.  This matter revolves around the terms of a 1995 "General Agency Agreement"[1] between the plaintiff, Market Finders Insurance Corporation ("Market Finders"), and the defendant, Scottsdale Insurance Company ("Scottsdale"), which gives Market Finders the authority to quote, execute, bind, delete, and renew insurance contracts as Scottsdale's agent.  (DE 114-3 at 1.) This agency agreement contains several indemnity provisions, one of which states that Scottsdale will indemnify Market Finders against liability sustained by policy holders and caused by Scottsdale's acts or omissions, including the cost of defense and settlements, provided that Market Finders has not caused or contributed to such liability by its own acts or omissions.  *Id.* at 6.  It also contains a provision in which Market Finders agrees to indemnify Scottsdale for any damages resulting

---

[1]  The court will refer to this agreement as the "agency agreement" or the "1995 agreement."

directly or indirectly from any violations of insurance law, regulations, or a breach of Market Finders' obligations under the agreement.  *Id.*  In addition, the agency agreement states that its drafting, execution, interpretation, and enforcement shall be governed by Arizona state law.  *Id.* at 8.

In 1999, National Emergency Services, Inc. ("NES"), contacted Market Finders through its own insurance broker, seeking assistance in securing a medical malpractice insurance policy.  As Scottsdale's agent, Market Finders wrote the coverage for NES, and Scottsdale underwrote a policy.  In March of 2000, this policy was canceled, and this cancellation caused NES to file suit against both Market Finders and Scottsdale in Texas.  In August of 2001, Scottsdale assumed the defense of and agreed to indemnify Market Finders subject to two limitations discussed in greater detail below.[2]  Pursuant to this 2001 indemnity agreement, Scottsdale and Market Finders presented a joint defense during the Texas trial; however, as this court has previously recognized, "Scottsdale made all of the trial strategy decisions, including the decision not to call a Market Finders representative who Scottsdale now claims is responsible for NES's claims."  (DE 86 at 2.)

Ultimately, the jury in this Texas suit found that Scottsdale had breached its contract with NES, its duty of good faith and fair dealing, and the Texas Insurance Code by engaging in unfair or deceptive acts or practices.  The jury also found that

---

[2]  The court will refer to this agreement as the "indemnity agreement" or the "2001 agreement."  A copy of this agreement is attached to the plaintiff's motion for summary judgment as Exhibit G.  *See* DE 99-8.

Market Finders had breached the Texas Insurance Code by engaging in unfair or deceptive acts or practices.  Market Finders then filed this action to require Scottsdale to defend and indemnify Market Finders from the Texas judgment. Scottsdale paid the judgment but filed counterclaims in this action, seeking indemnity or contribution from Market Finders for the Texas judgment because Market Finders caused or contributed to NES's claim through its own acts and omissions.

In its first order denying cross-motions for summary judgment, this court found that the Texas judgment does not affect this case under the doctrines of res judicata or collateral estoppel; that Scottsdale's present arguments are not precluded by "judicial admissions" from the Texas litigation; and that Scottsdale is not legally estopped from seeking indemnity.  *See* DE 63 at 4-6, 8-9, 9.  Perhaps most importantly, the court also found that Market Finders can rely upon a third agreement with Scottsdale, reached on April 17, 2002,[3] which prevents either party from introducing anything said or done in the Texas litigation "in any subsequent proceeding," including this matter.[4]  *See id.* at 6-8 (quoting the litigation agreement between the parties, attached to the plaintiff's most recent

---

[3]    The court will refer to this third agreement as the "litigation agreement" or the "2002 agreement."

[4]  More specifically, the court found that "[b]oth parties acknowledge that they agreed that 'nothing said or done by any attorney, witness, fact-finder or jurist'" in the Texas litigation "'will be used . . . in any way in any subsequent proceeding to determine responsibility, or relative responsibility'" in this action. (DE 66 at 3 (quoting the 2002 litigation agreement).)

4

motion for summary judgment as DE 99-9).  In a second order denying a

subsequent motion for summary judgment by Market Finders, the court found that

material issues of fact exist as to Scottsdale's degree of negligence; that Texas's

choice-of-law rules are not applicable to Scottsdale's contribution counterclaim;

that Scottsdale's actions in the Texas litigation do not constitute estoppel by

acquiescence in this matter; and finally, that the litigation agreement between the

parties does not preclude Scottsdale's current indemnity and contribution

counterclaims under the doctrine of collateral estoppel.  *See* DE 86 at 4-6, 6-8, 8-

9.

## III.    ANALYSIS

In its most recent motion for summary judgment (DE 99), Market Finders

raises three arguments.  The court need not address Market Finders's third

argument, but its first two arguments, and Scottsdale's responses, are discussed in

detail below.

## A.    The 2002 Litigation Agreement

First, Market Finders claims that the 2002 litigation agreement requires

Scottsdale "to approach this litigation with a blank slate and establish each and

every element of the NES claim, including the defendants' liability and damages."

(DE 99 at 11.)  Because this litigation agreement requires Scottsdale "to replicate

the NES trial in its entirety, including presentation of the NES claims and

subsequent damages awarded[,]" Market Finders argues that this court cannot

recognize any of the findings of the Texas court during the Texas litigation, but that this court must instead consider anew each issue presented during the previous litigation.  (DE 120 at 4.)  Thus, according to Market Finders, when this court considers the underlying (and ultimately successful) claims raised by NES during the Texas litigation, it must apply Kentucky's choice-of-law rules rather than Texas's choice-of-law rules.  *See, e.g.*, *Muncie Power Products, Inc. v. United Technologies Automotive, Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (stating that "[f]ederal courts sitting in diversity must apply the choice-of-law rules of the forum state").  Moreover, under Kentucky's choice-of-law rules, Market Finders argues that this court must apply the substantive law of either Kentucky or Virginia to NES's underlying claims, rather than the substantive law of Texas, which was applied in the previous litigation.  Furthermore, Market Finders argues that neither Kentucky nor Virginia law recognizes NES's (ultimately successful) Texas tort claim against Market Finders, for which Scottsdale currently seeks indemnity or contribution. Because Scottsdale is not entitled to rely on the findings of the Texas court, and because neither Kentucky nor Virginia law recognize the underlying tort claims from the Texas litigation, Market Finders argues that Scottsdale will not be able to establish Market Finders's liability in this matter, and therefore, Market Finders concludes that it is entitled to summary judgment on Scottsdale's indemnity and contribution counterclaims.

Market Finders's argument oversimplifies the court's previous finding.  As

6

Market Finders correctly points out, the court has previously found that the litigation agreement between the parties "limits Scottsdale's right to use the findings in the Texas litigation against Market Finders"; however, the court *also* found that the litigation agreement "does not prevent Scottsdale from attempting to re-prove any of these findings in subsequent litigation[,]" and Market Finders's argument overlooks this second half of the court's previous finding.  (DE 86 at 9.) Market Finders is correct that the 2002 litigation agreement prevents Scottsdale from making any use of any findings from the Texas litigation in the current suit, but the simple fact that NES filed suit against both Scottsdale and Market Finders is not excluded by this agreement because it does not involve the use of anything said or done by any attorney, witness, fact-finder or jurist in that litigation.  Thus, if this matter were to proceed, Scottsdale could introduce the fact that NES filed suit against the current parties in Texas and attempt to re-prove the Texas court's previous findings – under Texas law, provided Scottsdale could show, without introducing the Texas court's findings, that Texas law would have been appropriate in the Texas suit.  After re-establishing the Texas court's findings, Scottsdale could then attempt to prove its indemnity and contribution counterclaims under the appropriate substantive law for this court.

This would be a cumbersome process, and in imposing this encumbrance on Scottsdale, Market Finders would enjoy the benefit of the bargain it made in the parties' litigation agreement.  But although the litigation agreement might pose a

7

significant barrier to Scottsdale at trial, it does *not* completely bar either party from making subsequent claims against each other for indemnity or contribution; indeed, by its very terms, it contemplates the possibility of such a future action, providing that "[n]othing said or done by any attorney, witness, fact-finder or jurist *in this trial* will be used by Scottsdale in any way *in any subsequent proceeding* to determine responsibility, or relative responsibility vis a vis Market Finders, for any claim arising out of the claims by the Plaintiff in the referenced litigation."  (DE 99-9 at 1.)  Accordingly, the court will not grant summary judgment to Market Finders based solely on the 2002 litigation agreement.[5]

**B.    The 2001 Indemnity Agreement**

Market Finders also argues that a 2001 indemnity agreement between the parties is still binding and requires Scottsdale to indemnify Market Finders. According to Market Finders, this 2001 agreement "was not by its terms a restatement of the indemnity agreement set forth in the [original 1995] Agency Agreement but rather a separate and distinct indemnity agreement with its own

---

[5] In its reply, Market Finders further asserts, without legal citation, that "[e]ven if Scottsdale could convince a jury that Market Finders breached another state's insurance codes, its right to indemnity under the Agency Agreement would be contingent upon Scottsdale demonstrating that damages flowed to it as a result of Market Finders' violation of such law or regulation."  (DE 120 at 6.)

This argument, like the general argument discussed above, also misinterprets the court's previous rulings and the scope of the parties' 2002 litigation agreement. Again, Scottsdale may not rely upon the findings from the previous litigation, but if this matter were to proceed further, Scottsdale could attempt to re-prove NES's damages and then attempt to prove its own indemnity and contribution counterclaims against Market Finders, without using or relying upon any findings from the previous Texas litigation.

terms and conditions." (DE 99 at 18.) In response, Scottsdale claims that the letter did not alter the indemnity provisions of the 1995 agency agreement, and thus, Scottsdale argues that the court should disregard this 2001 letter as completely "inconsequential." *See* DE 114 at 18. The court finds, however, that Scottsdale's descriptive claim is plainly incorrect because, as both parties recognize, the 2001 letter contains different terms, different language, different consideration, and a different, more specific bargain than the indemnification provisions of the original agency agreement.[6] This new bargain was then executed over the subsequent course of the Texas litigation. Therefore, the court cannot simply ignore or disregard its existence and content. *See, e.g.*, *Angelou v. African Overseas Union*, 33 S.W.3d 269, 278, 278-81 (Tex. App. 2000) (listing the traditional elements generally required to create an enforceable contract, including offer, acceptance, meeting of the minds, communication of consent, execution of the contract, and consideration); *Gannon v. Bronston*, 55 S.W. 358, 360 (Ky. 1932) (holding that "[t]he doing by the promisee of something lawful which he does not otherwise have to do is sufficient consideration to support the agreement of the promisor"). Accordingly, the court finds that this 2001 letter represents a

---

[6] For example, in addition to the conditions discussed at greater length below, Market Finders points out that unlike the original 1995 agency agreement, this 2001 indemnity agreement was entered into by counsel for the parties and did not state that it was to be controlled by Arizona law. For its part, Scottsdale points out that the 2001 indemnity agreement "only contemplates a potential duty of Scottsdale to indemnify Market Finders under certain circumstances but does not even reference, much less alter, Market Finders' duty to indemnify Scottsdale pursuant to the terms of the Agency Agreement." (DE 114 at 18.)

9

further agreement between the parties beyond the provisions of the indemnity
clauses in the original 1995 agency agreement.  The court further finds that in this
2001 indemnity agreement, subject to certain specific limitations and conditions
discussed at greater length below, Scottsdale agreed to defend and indemnify
Market Finders, Market Finders gave up its right to a separate defense, and both
parties agreed to conduct a joint defense in order to "optimize the defense of this
action, without duplication of cost or effort."  (DE 99-8 at 1.)

In its own words, this 2001 indemnity agreement states that "Scottsdale
will, effective August 1, 2001, assume the defense of and indemnify Market
Finders" in the Texas litigation, subject to only two conditions.  *See* DE 99-8.  The
first condition sets out the various roles of the attorneys already involved on behalf
of both Market Finders and Scottsdale; the second condition provides, in part, that
"[i]n the event that facts *subsequently become known* which demonstrate that
Market Finders 'caused or contributed to the cause' of NES's claim . . . Scottsdale
reserves the right to withdraw its agreement to defend and indemnify Market
Finders."  *Id.* at 1 (emphasis added).  Market Finders claims that Scottsdale did not
learn any new and relevant facts after the parties reached this 2001 agreement;
therefore, because the second condition set forth in this indemnity agreement was
not met, Market Finders concludes that Scottsdale is "not entitled to withdraw its
defense and indemnification of Market Finders, and its counterclaim in this action
must be dismissed as a matter of law."  (DE 99 at 19.)

Scottsdale briefly argues, without citation or further explanation, that "any duty . . . to indemnify Market Finders is irrelevant here as there is no dispute that Scottsdale has paid the entire judgment rendered against Scottsdale and Market Finders in Texas.  As such, there is currently nothing for Market Finders to be indemnified from."  (DE 114 at 18.)  Although Scottsdale did eventually pay the judgment arising out of the Texas litigation, Scottsdale is presently trying to reverse both the indemnification provisions of this 2001 agreement and its ultimate indemnification of Market Finders.  The 2001 agreement required Scottsdale to defend and indemnify Market Finders unless it subsequently learned that Market Finders caused or contributed to the cause of NES's underlying claim, and the fact that Scottsdale initially paid the Texas judgment does not free it from this continuing obligation.

In the alternative, Scottsdale argues that the second condition of this 2001 indemnity agreement has been met because "Scottsdale did acquire information relating to Market Finders' role in causing or contributing to NES's claim after the August 1st letter."  (DE 114 at 18.)  After the Texas litigation, Scottsdale claims that it learned that the Texas jury "attributed a substantial portion of its findings" to the "manipulation of the cancellation of the NES policy" by Watts, Market Finders's representative.[7]  This argument, however, depends entirely on what Scottsdale

---

[7]  This claim is not based on any new information that Scottsdale learned about Market Finders's behavior; rather, it is based on Scottsdale's limited survey of the post-verdict impressions of some of the Texas jurors and a subsequent evaluation of those impressions by one of Scottsdale's representatives.  After

claims it subsequently learned about "why the [Texas] jury reached its conclusion," *see* DE 114-22 at 3, and as this court has previously held, the 2002 litigation agreement between the parties prevents Scottsdale from relying upon or making any use of anything said or done by any attorney, witness, fact-finder or jurist in the Texas litigation, including information about the jurors' deliberations and conclusions.  Therefore, because the parties' 2002 litigation agreement bars Scottsdale's claim that the second condition of the 2001 agreement has been met, the court will enforce the indemnity provisions of the 2001 agreement.  Accordingly,

**IT IS ORDERED** that the plaintiff's motion for summary judgment on the defendant's counterclaims (DE 99) is **GRANTED**.

**IT IS FURTHER ORDERED** that the motions in limine (DE 100, DE 101) are **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that the pretrial and trial dates are **CANCELLED**.

---

conducting a poll and individual interviews with some of the Texas jurors, Scottsdale's representative claims that he "decided" that Market Finders caused or contributed to the cause of NES's claim in the Texas litigation. *See* DE 114-22 at 3.

Obviously, this decision occurred after the 2001 agreement between the parties; however, Market Finders argues that even if these impressions were not barred by the 2002 litigation agreement between the parties, they might very well be inadmissible in this matter as hearsay.  Moreover, it is unclear whether Scottsdale's "decision" about these juror impressions satisfies the condition in the 2001 indemnity agreement of "facts . . . which demonstrate that Market Finders 'caused or contributed to the cause' of NES's claim."  Because the court finds that the 2002 litigation agreement bars the introduction of these juror impressions and Scottsdale's subsequent "decision," however, the court need not decide these questions.

Signed on  April 16, 2007

**Jennifer B. Coffman, Judge**
**United States District Court**